## ASSESSMENT FOR PAVING A STREET OCCUPIED IN PART BY A MARKET HOUSE.

Court of Appeals for Hamilton County.

MARY EVA WOLF ET AL v. CITY OF CINCINNATI AND IRA D. WASH-BURN, AUDITOR OF SAID CITY.

Decided, July, 1913.

*Assessment for Improving Street—Where Fixed at Fifty Per Cent. Not Inequitable Against Abutting Property, When.*

Where a market house occupies the middle of a street, extending across an entire square from one intersecting street to another, and the said street is improved with a new pavement on both sides of the market house, an assessment of fifty per cent. of the cost, exclusive of intersections, against the abutting property is not inequitable but may be legally made and will not be enjoined.

*W. W. Prather,* for plaintiffs in error.
*O. S. Bryant,* Assistant City Solicitor, contra.

JONES, E. H., J.; SWING, J., and JONES, O. B., J., concur.

Plaintiffs brought an action in the court below for an injunction against the defendant, the city of Cincinnati and the auditor of the said city, seeking to enjoin the collection of an assessment against the plaintiff's property bounding and abutting upon Pearl street in said city, between Broadway and Main streets, said assessment being made against their property to pay the expense of improving said portion of said street with bitulithic pavement, setting granite curbs, etc.

The lower court made a separate finding of facts and conclusions of law, and upon those findings and the arguments of counsel the cause was submitted to this court. The trial court found:

"That said Pearl street between Broadway and Main streets in said city is two blocks in length, crossing Sycamore at a point one-half the distance between Broadway and Main street, and that the portion of Pearl street between Broadway and Sycamore street is divided into two streets by a public market house running lengthwise of said Pearl street, which market house is bounded on both sides by said improvement for the entire length of said market house; that said market house is 400 feet long and 52 feet wide, and that portion of said Pearl street between Broadway and Sycamore that lies north of said market house is known as North Pearl street and is 400 feet long by 33 feet wide between curbs, and that that portion of said Pearl street between Broadway and Sycamore street lying south of said market house is known as South Pearl street and is 400 feet long and 33 feet wide between curbs, and that both said North Pearl street and said South Pearl street were included and improved under said resolution and ordinance."

It was also found by the lower court that the market house was a substantial brick structure containing stalls for the use of persons selling vegetables, fruits, etc., for which the city of Cincinnati receives an annual rent for each stall, and in which said merchandise is sold for profit.

It is contended by the plaintiffs in error, all of whom are owners of property abutting on said Pearl street, that the assessments for said improvement are illegal and void for the reason that no part of the cost of said improvement was assessed against the city of Cincinnati on acount of said market house, or that, admitting that property is not assessable, the frontage of said market house upon said so-called North and South Pearl streets should be included in estimating the total frontage and after same is done their property should only bear its ratable portion of said cost.

The resolution declaring it necessary to improve said portion of said Pearl street provided as follows:

"That fifty per cent. of the whole cost of said improvement, less the cost of intersections, shall be assessed by the foot front-

age on all lots and lands bounding and abutting upon the pro-
posed improvement, which said lots and lands are hereby deter-
mined to be specially benefitted by said improvement.''

The ordinance passed later contained a similar provision. It
will thus be seen that the city assumed the burden of paying fifty
per cent. of the cost of said improvement, after taking out the
cost of the intersections. The percentage which the city shall
bear in making an improvement is to be determined by council
in each particular case. It seems to us to be the policy of the law
that council should take into consideration all the circumstances
and conditions of each improvement, and fix such a percentage
to be borne by the city as will be equitable and just; in doing this
it considers any public land that may be situated along the line
of the proposed improvement or property which for any other
reason might be exempt from assessment, the nature of the prop-
erty assessed, and its ability to bear the burden placed upon it.

We must assume that in fixing the percentage in this case all
those matters were taken into consideration by council and that
the city undertook to divide this work equally with the abutting
owners, because of the position of the market house in the center
of said street. It strikes the court that this division was a liberal
one upon the part of the city and that there is nothing inequita-
ble in the assessment as finally made.

It has been held that an assessment can not be levied against
public property such as this market house was, for street or
sewer improvements, and we think the case of *George Mathers
et al* v. *City of Norwood et al*, decided by this court and reported
in the *Court Index* of February 21, 1910, is decisive of the ques-
tion raised in this case. In its opinion, by Giffen, P. J., the
court says:

''The resolution of the city council 'that 98 per cent. of the
whole cost of said sewers should be assessed by. the front footage
upon all lots and lands bounding and abutting upon said im-
provements was not intended to embrace the strip of ground in
the middle of the street which was dedicated for park purposes,
because such public property is not liable to assessment for a
sewer improvement. *City of Toledo* v. *Bd. of Education,* 48 O.
S., 83.''

It is contended by counsel for plaintiffs in error that.the above case was decided upon the ground that the park in the center of the street in Norwood had natural drainage and was therefore not subject to assessment for a storm sewer. It is true that in its finding of facts the court finds such to be the case, but the opinion above quoted shows that the court clearly held that the property was not assessable and was not to be considered in estimating the frontage. In its conclusions of law in the Norwood case the court found that ''public property'' is not liable to assessment for sewer improvement. Counsel for plaintiffs in error, in their brief, point out that in the resolution and ordinance passed by council, all the lots and lands bounding and abutting upon the improvement were found and determined by council to be ''specially benefitted by the improvement.'' This language, they claim, embraces the market house. We think not. It embraced only such lots and lands as could be assessed for said improvement. The resolution and ordinance were adopted and passed under requirements of law as notice to the owners who were to bear their ratable portion of the expense according to the ''foot frontage'' plan.

The words of the ordinance ''which said lots and lands are hereby determined to be specially benefitted by said improvement'' do not change or fix the mode of assessment, and refer only to the lots and lands which can be assessed. The city pays the whole cost for intersections and fifty per cent. of the remainder and in fixing this apportionment, liberal as it appears to be upon the part of the city, the location of the market house in the center of the street was obviously considered.

Judgment.affirmed.